(80 Misc. Rep. 369.)

## CONDON v. EXTON-HALL BROKERAGE & VESSEL AGENCY.

(City Court of New York, Trial Term.　April, 1913.)

1. INSURANCE (§ 73*)—BROKERS—AGENCY.

A broker employed to secure insurance is agent for the insured and not for the insurer.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 99, 100; Dec. Dig. § 73.*]

2. INSURANCE (§ 229*)—AGENTS—POWERS—CANCELLATION OF POLICY.

An agent employed merely to procure insurance has no implied authority to cancel or to accept an operative notice of cancellation.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 500–503; Dec. Dig. § 229.*]

3. INSURANCE (§ 83*)—AGENTS—LIABILITY—"MISFEASANCE"—"NONFEASANCE."

Where a brokerage agency employed to procure insurance undertook in the interest of the insurer to effect a cancellation of the insurance procured and entered upon its undertaking, but was negligent in failing to effect the cancellation, it was liable for the consequential loss to the insurer, though there was no consideration for its undertaking to effect the cancellation; the failure to complete the execution of an engagement begun constituting an actionable "misfeasance," rather than a nonactionable "nonfeasance."

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 107–110; Dec. Dig. § 83.*

For other definitions, see Words and Phrases, vol. 5, p. 4535; vol. 5, pp. 4821, 4822.]

4. CONTRACTS (§ 51*)—CONSIDERATION—SUFFICIENCY.

An injury to one party or a benefit to another is a sufficient consideration for a promise.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 223, 224; Dec. Dig. § 51.*]

Action by John T. Condon against the Exton-Hall Brokerage & Vessel Agency to recover the amount paid on an insurance policy after notice to agent to cancel.　Judgment for plaintiff.

Carmody & Carswell, of New York City, for plaintiff.

Coudert Bros., of New York City (Thomas Murray, of counsel), for defendant.

GREEN, J.　The plaintiff in this action is the assignee of a claim formerly belonging to four insurance companies; so hereinafter, for a complete comprehension of the facts, when reference is made to the plaintiff, the insurance companies are intended.　The defendant is a corporation doing a general insurance business, procuring insurance for clients, and acting as agents in certain cases for insurance companies, and issuing as such agents insurance policies.　It is conceded in the case at bar that the defendant company was not the general agent for the issuing of policies for any of the companies plaintiff in this action.　The defendant in the course of its business submitted a risk or application for insurance upon a vessel lying in some Western waters, and the plaintiff issued the policy of insurance to the amount of $2,000.　The policy was sent to the defendant, and subsequently deliv-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ered to the insured in the West. A short period of time elapsed, when plaintiff wrote to the defendant company, advising it of its desire to cancel the policy, and stated in a letter dated November 8, 1911:

"Kindly give this your usual prompt attention, and in the meantime consider this letter in lieu of the usual five days' notice of cancellation."

On November 10th the defendant wrote:

"We have ordered the cancellation of your policy, and as soon as received will return same to you."

On the same day the defendant company wrote to its correspondent or agency in the West, the Insurance Agency Company, informing said company that defendant had received a letter from the plaintiff to effect cancellation of the policy in question, stating the reasons assigned by the plaintiff for the request, and further stated that defendant "did not see any reason why the risk was not desirable to write." The defendant then concluded its letter as follows:

"You will therefore investigate and advise us. Please return the policy, and we will replace the amount for you elsewhere."

Nothing further was done, and on the 22d or 23d of November the property insured was destroyed by fire. The plaintiff thereafter paid the insured the amount of the policy, because it had never been canceled, and this action is now brought against the defendant to recover the amount so paid, upon the ground of defendant's negligence in failing to take effective means to cancel the policy after the notice by plaintiff to the defendant contained in the letter of November 8th, hereinbefore referred to.

The defendant resists the payment of plaintiff's claim upon the ground that it was under no obligation to effect the cancellation, that its services were gratuitous, without consideration, and that it was under no legal obligation to cancel the policy in suit. This action is one not without its difficulties, and one not within the general run of actions, and for a proper understanding of the legal principles applicable thereto it is necessary to state a few well-settled principles of law, in order to observe by their statement the distinctions to be drawn from them in this case.

[1] It is settled beyond controversy in this state that a broker who is employed to secure insurance is the agent for the insured, and not for the company. Northrup v. Piza, 43 App. Div. 284, 60 N. Y. Supp. 363, affirmed without opinion 167 N. Y. 578, 60 N. E. 1117; Morriss v. Home Ins. Co., 78 Misc. Rep. 303, 139 N. Y. Supp. 674.

[2] It is equally well settled that a broker or agent, employed merely for the purpose of procuring insurance, has no implied authority to cancel or to accept an operative notice of cancellation. See Richards, Ins. (3d Ed.) 388, 389, and cases cited. The situation thus presented is this: The defendant in this action was the agent in law for the insured, to procure the insurance, not to destroy it, and consequently the notice of cancellation served upon the defendant was of no avail to the plaintiff, for the evidence is entirely barren of any authority in defendant to accept or effect a cancellation of the policy.

[3] The question arises, however, in this case whether the defend-

ant can be held liable for undertaking to effect a cancellation of the policy, even though his services were voluntary, gratuitous, and without consideration, and an examination of the facts in this case and the authorities convinces me that he is liable upon the theory of misfeasance; for I find as a fact from the evidence in this case that the defendant by its letters undertook to effect a cancellation of the insurance policy in question and was negligent in failing so to do. There is a difference between nonfeasance and misfeasance. In Words and Phrases, vol. 5, p. 4535, this distinction is pointed out:

"The one being a total omission to do an act which one gratuitously promises to do, and the other a culpable negligence in the execution of the act. If a party makes a gratuitous engagement, and actually enters upon the execution of the business, and does it amiss through the want of due care, by which danger ensues to the other party, an action will lie for misfeasance."

The leading case in this state and in the United States upon the question of nonfeasance and misfeasance is the case of Thorne v. Deas, 4 Johns. 84, decided in 1809. In that case two men were the joint owners of a vessel. One of them voluntarily undertook to obtain insurance on the vessel, but neglected to do so. The vessel was lost, and in an action against the other owner by his joint owner it was held that no cause of action would lie for the nonfeasance, there being no consideration for the promise. In that case the court said (Kent, C. J., writing the opinion):

"The chief objection raised to the right of recovery in this case is the want of a consideration for the promise. The offer on the part of the defendant to cause insurance to be effected was perfectly voluntary. Will, then, an action lie when one party intrusts the performance of a business to another, who undertakes to do it gratuitously, and who wholly omits to do it? If the party who makes this engagement enters upon the execution of the business and does it amiss, through the want of due care, by which damage ensues to the other party, an action will lie for this misfeasance. But the defendant never entered upon the execution of his undertaking, and the action is brought for the nonfeasance."

It will be observed that the distinction between nonfeasance and misfeasance is clearly pointed out, and it was there held that the undertaking, having been voluntary and never having been entered upon, no action for nonfeasance would lie. This case has settled the law upon the questions involved in the case at bar, and it has been followed in every succeeding case, without qualification or distinction as to the principle therein laid down. In the case of Rose v. United States Telegraph Co., 29 N. Y. Super. Ct. 307, it was held that:

"A mere gratuitous offer to perform a service for another imposes no legal obligation to perform such service; but if performance is undertaken, and it is done negligently or without due care, so that an injury ensues, an action will lie by the person injured."

See, also, Boniface v. Relyea, 29 N. Y. Super. Ct. 405; Doupe v. Genin, 31 N. Y. Super. Ct. 32; Nellis v. De Forest, 16 Barb. 62; Mechem Agency, § 478.

The defendant in this action insists that plaintiff has wholly failed to show any consideration for the undertaking of defendant to effect cancellation of the policy, and claims the true test of defendant's liability to be, before such can arise:

"The agreement must create an obligation. It must be an agreement enforceable at law."

And counsel cites the case of Bustonaby Brothers v. Revardel, 71 Misc. Rep. 207, 130 N. Y. Supp. 894, decided by me as a case in point. He further cites the case of Grossman v. Schenker, 206 N. Y. 468, 100 N. E. 39, as authority for the proposition that:

"The general rule is that a promise, not under seal, made by one party with none by the other, is void; for unless both are bound, so that either can sue the other for a breach, neither is bound."

[4] With these general propositions of law I have no quarrel, and concur fully in the law as there laid down; but the vice of defendant's contention lies in the fact that they are not applicable to the case at bar. The theory of plaintiff's cause is negligence, based upon defendant's misfeasance, in undertaking to do that which, while voluntary and without consideration, was not accomplished through defendant's negligence, and for this in my opinion an action will lie. This principle is well stated, and arises so infrequently that it will bear repetition, in the case of Ainsworth v. Backus, 5 Hun, 416, as follows:

"The rule seems to be well settled that if a person undertakes an employment or trust, and begins the performance of it, he is liable for any injuries which may result from his neglect, even though he may not have received any consideration for the promise. If he omit to do what he has thus agreed to accomplish, the failure of the consideration excuses his omission. This is called a nonfeasance. If he begin the execution of his engagement and fail to complete, his failure is a misfeasance, and he becomes responsible. Wilkinson v. Coverdale, 1 Esp. 75; Thorne v. Deas, 4 Johns. 84; Smedes v. Bank of Utica, 20 Johns. 372. The distinction thus recognized and applied rests, doubtless, upon the proposition that an injury to one party or a benefit to another is a sufficient consideration for a promise. Miller v. Drake, 1 Caines, 45; Forster v. Fuller, 6 Mass. 58, 4 Am. Dec. 87; Smedes v. Bank of Utica, 20 Johns. 380. In Wilkinson v. Coverdale the defendant undertook, voluntarily and without consideration, to get a policy of insurance renewed on account of the plaintiff, but did it so negligently that no benefit was derived from it, and the action against him was allowed to proceed. In the case of Thorne v. Deas, a case which was cited and approved in the Court of Errors in Smedes v. Bank of Utica, supra, the doctrine of misfeasance was considered, and the cases stated and reviewed. It was not questioned that a voluntary undertaking, which the promisor undertook to carry out, entailed upon him the penalty of neglect in the performance of this promise. The rule is founded in common sense, in equity, and in good faith."

The evidence in the case at bar, tried before the court without a jury, is almost wholly documentary, consisting of letters passing between the parties to this action, and they lead to the irresistible conclusion that the defendant undertook to effect a cancellation of the policy which is the subject of the suit, and negligently omitted to do so. In addition to the excerpts recited from the letters in this opinion, the letter from the defendant to the plaintiff, dated December 9, 1911, some weeks after the fire loss, is also important. It will be remembered that on November 8th plaintiff informed defendant to cancel the policy. Defendant under the date December 9th wrote:

"On November 8th you wrote us a letter in which you stated * * * you desired the policy canceled. * * * We replied to your letter, * * * and stated that we had ordered the cancellation of your policy. We wrote to

the Insurance Agency Company [this company was defendant's agent or correspondent in St. Louis, from whom defendant received the risk originally] on November 10th * * * asking if they would investigate the risk, and also requesting them to return your policy, and that we would replace the amount for them elsewhere. * * * The Insurance Agency Company replied under date of November 18th, which letter was received on the 20th. Nothing was done by us with this letter. At the time of writing our first letter to the Insurance Agency Company on the 10th inst., it was not our intention to replace the line at that time, but to draw out the facts from them, and, after getting these, if we still regarded the risk as desirable, to replace the line elsewhere, and as the facts elicited from the Insurance Agency showed the risk in our opinion to continue desirable, it was our honest intention to replace the line elsewhere, but the loss occurred before this was actually done."

This letter, taken in conjunction with all the letters in the case, convinces me that the defendant, while it undertook to cancel the policy, nevertheless took a chance of the risk being safe. Defendant's conduct lulled the plaintiff into the position of assuming defendant would carry out what it had undertaken to do, and if this defendant, for the purpose either of retaining a client or a premium, took the chance of continuing the policy by not canceling it as directed, and as it undertook to do, it must bear the burden and pay the loss.

I therefore award judgment in this case to the plaintiff for the sum of $1,949, with interest and costs, and let it be entered accordingly The defendant may have 10 days' stay and 30 days to make a case after notice of entry of the judgment.

Judgment accordingly.